IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DAVID PENA, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CRIMINAL ACTION No. V-02-11 |
| | § | |
| UNITED STATES OF AMERICA, | § | CIVIL ACTION No. V-05-5 |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is David Pena's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. # 97) and Respondent's Motion to Dismiss (Dkt. # 112). For the reasons set forth herein, Respondent's Motion to Dismiss is GRANTED and Pena's Motion to Vacate under § 2255 is DENIED.

**Factual and Procedural History**

Pena and his co-defendant, Thomas Taylor, were indicted on two counts: 1) conspiracy to possess 503 grams of pseudoephedrine with intent to manufacture methamphetamine, and 2) possession of 503 grams of pseudoephedrine with intent to manufacture methamphetamine. The Court appointed Eric Davis to represent Pena. On May 21, 2002, a two day jury trial commenced, and Pena and Taylor were tried together. The jury found both defendants guilty of conspiracy and not guilty of possession. In its pre-sentence investigation report, the probation department recommended a base offense level of 32 for Pena based on the Department of Public Safety's drug analyst, Hector Cadena's contention that 120 grams of pure pseudoephedrine could be extracted from the 503 grams of seized contraband.[1] Pena's criminal history was a level four, establishing a

---

[1] Dkt. # 72, p. 5. The probation department contacted Cadena during the preparation of the pre-sentence investigation report, at which time he confirmed the 120 grams figure that he

punishment range of 168 to 210 months. Pena's counsel objected to the amount of drugs attributable to Pena in the pre-sentence investigation report, contending that Cadena testified that only 80 grams of pure pseudoephedrine could be extracted from the contraband. (*Id.* at 6). The Court overruled Pena's objections, and he was sentenced to 180 months imprisonment and three years of supervised release on August 19, 2002. Judgment issued on August 21, 2002.

Pena appealed his conviction to the Fifth Circuit arguing the trial court erred by: (1) denying his motion for mistrial based on Clara Bradley's testimony, (2) allowing Rhonda Strain to testify regarding Pena's association with Thomas, and (3) adopting the pre-sentence report's drug quantity findings. The Fifth Circuit affirmed Pena's conviction on August 14, 2003. *United States v. Pena*, 71 Fed. Appx. 367 (5th Cir. 2003). His petition for writ of certiorari to the United States Supreme Court was denied on January 12, 2004. *Pena v. United States*, 540 U.S. 1148 (2004). Pena timely filed the instant motion to vacate on January 7, 2005.[2]

**Analysis**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28

---

testified to at trial. *Id.* at 8–9.

[2] Pena certified that he signed his § 2255 motion on January 7, 2005. The envelope his motion arrived in is postmarked January 12, 2005, and the clerk received it on January 14, 2005. Thus, Pena submitted his motion to prison officials sometime between January 7 and January 12. Under the "mailbox rule," the date of filing for *pro se* prisoners is set to the date the inmate places the legal paper in the hands of prison officials for mailing. *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998). Under the mailbox rule, the Court finds that Pena's motion was timely filed on or before January 12, 2005.

U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

I. <u>Ineffective Assistance of Counsel</u>

The majority of Pena's claims allege ineffective assistance of counsel at the trial and appeal level. Such allegations presented in a § 2255 motion are properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687. Thus, a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A. <u>Severance</u>

Pena argues his trial counsel was ineffective for not seeking a severance and that the "tainted" evidence against his co-defendant prejudiced his trial. Pena does not specifically identify what witnesses or evidence was "tainted." As a general rule, defendants indicted together should

be tried together, especially in conspiracy cases. *United States v. Valdez*, 453 F.3d 252, 261 (5th Cir. 2006). A district court should grant a severance only if a defendant is able to show that "there is a serious risk that a joint trial would compromise a special trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). A disparity of evidence in a trial involving multiple defendants does not in and of itself constitute prejudice. *United States v. Tarango*, 396 F.3d 666, 674 (5th Cir. 2005).

Pena has not demonstrated that he suffered any prejudice as a result of being tried together with Taylor. They were indicted together for the same conspiracy that stemmed largely from one incident involving both defendants on the night of December 14, 2001. The majority of the evidence and testimony presented related to both defendants.[3] Further, the Court gave a proper limiting instruction that the jury should give separate consideration of the evidence as to each defendant and each count.[4] Given that the defendants were appropriately joined together in the indictment, it was not ineffective assistance for Pena's attorney not to seek a severance. *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

B.   Failure to Investigate

Pena also makes a general allegation that counsel was ineffective because he failed to

---

[3] The only evidence relating solely to Thomas came from Rhonda Strain. The Court instructed the jury before her testimony that they could only consider the evidence of similar bad acts against Thomas. Dkt. # 71, p. 78–79. The same instructions were repeated in the jury charge.

[4] Dkt. # 42.

investigate and interview witnesses. Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). Pena merely states that his counsel was deficient for "fail[ing] to investigate and interview witnesses."[5] He has not provided any information as to who should have been interviewed and what they would have said, or what any further investigation would reveal. He has basically provided no specific information for the Court to judge whether counsel's performance was deficient or whether the outcome of the trial would have been different. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (finding conclusory allegations of deficient performance and prejudice are not sufficient to prove claims of ineffective assistance of counsel). Because Pena has not provided any specific details about what a further investigation would have revealed and how it would have altered the outcome of his trial, he has not shown that counsel's performance was deficient in this respect.

Pena makes a related argument that counsel failed to investigate the motives of the government's witnesses. While Pena does not specify which witnesses he is referring to, counsel's performance was clearly not deficient in this respect. Pena's counsel thoroughly cross-examined each of the government's witnesses. He questioned Gene Bradley about his pending DWI, which the prosecutor agreed to help resolve in his favor in exchange for his testimony.[6] He also revealed that Clara and Gene Bradley had used drugs in the past and had been drinking on the night they reported Pena to the police.[7] Finally, Pena's counsel explored Clara Bradley's motives for testifying

---

[5] Dkt. # 97, p. 5.

[6] Dkt. # 79, p. 52.

[7] *Id.* at 45.

against Pena. He extensively questioned her and brought forth defense witnesses to support the defense's theory that Clara was retaliating against Pena for an unpaid cell phone bill.[8] Pena's counsel's examination of the government witnesses' motives constituted reasonably effective assistance, as required by *Strickland*. Pena has not specified any further motives which counsel should have investigated or questioned the witnesses about. Thus, Pena has failed to establish that counsel's performance was deficient.

  C.  <u>Amount of Drugs</u>

Next, Pena complains his attorney did not put forth any evidence at sentencing to dispute the amount of drugs attributable to him.[9] However, Pena's counsel did object to the drug amount attributed to Pena. He recalled that Hector Cadena, the government's drug analyst, testified that only 80 grams of pseudoephedrine could be extracted from the contraband. However, a review of the transcript shows that Cadena testified that 120 grams of pure pseudoephedrine could be extracted from the substance,[10] and he confirmed that amount when he was contacted by the probation

---

[8] *Id.* at 38, 66.

[9] Pena also claims his appellate counsel (i.e. the same counsel who represented him at trial) was ineffective for not presenting evidence that the drug amount was incorrect. The Fifth Circuit already ruled on direct appeal that the district court did not err in its drug quantity calculation with respect to Pena. *United States v. Pena*, 71 Fed. Appx. 367, *3 (5th Cir. 2003). Thus, this issue cannot be relitigated in his § 2255 motion. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.1986) (affirming district court's refusal to entertain the defendant's § 2255 motion and noting that it has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions").

[10] Dkt. # 71, pp. 73, 76 ("There is approximately two thousand tablets, and that's about sixteen milligrams per tablet, that's about a hundred and twenty grams of pseudoephedrine."). Some confusion may have existed when the prosecutor asked how many grams of methamphetamine could be produced from that amount of pseudoephedrine, and Cadena responded eighty grams. *Id.* at 76. The sentence, however, was properly based on the amount of pure pseudoephedrine.

department in relation to the pre-sentence investigation report.[11]

While Pena's counsel actively advocated for a lower drug amount, Pena's argument that he was deficient for not presenting evidence to counter the drug amount is without merit. Essentially Pena is reasserting his previous argument that his counsel failed to investigate or discover evidence to use at sentencing to counter the drug amount found by the government's analyst. The drug analyst attested at trial that he analyzed the seized substance and determined that it was approximately 503 grams total weight and that around 120 grams of pure pseudoephedrine could be extracted from the contraband. Pena makes no showing to the contrary, nor does he allege that an independent analysis was available and would have reached a different result. *United States v. Ruiz*, 71 F.3d 875, (5th Cir. 1995). Failure to allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial precludes a finding that counsel was ineffective. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Further, the Fifth Circuit explicitly upheld the district court's ruling related to the amount of drugs attributable to Pena. Thus, this issue cannot be relitigated, even if couched in terms of an ineffective assistance of counsel claim. *Kalish*, 780 F.2d at 508.

II.     Prosecutorial Misconduct

Next, Pena argues that the prosecutor withheld the fact that Rhonda Strain was going to testify against the defendants until the last minute, and they continued to compile evidence against him while he was in custody. Strain was disclosed on the government's witness list on May 17, 2002, four days before trial. The prosecutor notified Thomas' attorney at trial that he intended to

---

[11] *See United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994) ("The court can adopt facts contained in a PSR without inquiry, if those facts had an adequate evidentiary basis and the defendant does not present rebuttal evidence."). The defendant bears the burden of demonstrating that the information in the PSR is materially untrue. *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990).

put Strain on the stand to elicit testimony regarding similar bad acts by Thomas subsequent to the date of the conspiracy alleged in the indictment (i.e. December 14, 2001).

After conducting a Rule 404(b) hearing outside the presence of the jury, the Court admitted Strain's testimony over the objections of both counsel.[12] Strain testified Taylor had supplied her methamphetamine over the past one and a half years.[13] Further, she stated that Taylor recruited her to buy many of the supplies to manufacture methamphetamine on January 6, 2002, giving her $200 and a list of supplies to purchase.[14] Strain immediately notified the FBI. The only testimony given by Strain that related to Pena was her statement that she saw Pena and Taylor together at Taylor's residence on January 9, 2002.[15] This Court, affirmed by the Fifth Circuit, found that the testimony against Pena was purely factual (i.e. not 404(b) evidence) and was relevant to the conspiracy charge to show association/relationship between Pena and Thomas.[16]

Pena's allegations of prosecutorial misconduct are meritless. Pena's counsel had sufficient time to investigate the witness, had opportunity to hear her testimony in the 404(b) hearing and lodge objections. Pena's contention that it was impermissible to allow testimony relating to an event that occurred after the date of the conspiracy charged is also baseless.[17] Strain simply testified to something she witnessed first-hand and the information she provided was relevant to issues in the

---

[12] Dkt. # 79, p. 163.

[13] *Id.* at 167.

[14] *Id.* at 170.

[15] *Id.* at 173.

[16] Dkt. # 72, p. 172–74.

[17] The Fifth Circuit ruled that it was not error to admit Strain's testimony; thus, this issue cannot be relitigated. *Kalish*, 780 F.2d at 508.

case. Thus, the Court rejects Pena's prosecutorial misconduct claim.

III.    <u>*Blakely* Issue</u>

Finally, Pena contends that because the amount of drugs was not submitted to the jury for a finding, his sentence violates his Sixth Amendment right to a trial by jury under *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* held that, in the context of mandatory state sentencing guidelines, the Sixth Amendment right to a jury trial prohibits judges from enhancing criminal sentences based on facts other than those decided by the jury or admitted by the defendant. *Id.* at 313-14 (relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). The year following *Blakely*, in *United States v. Booker*, a majority of the Supreme Court extended to the federal sentencing guidelines the rule that pursuant to the Sixth Amendment, any fact, other than the fact of a prior conviction, "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005). Thus, Pena asserts that his sentence must be reduced under *Blakely/Apprendi* because the amount of drugs attributed to Pena for purposes of sentencing was not a fact found by a jury or one admitted by him.

Indeed, if the Supreme Court decides a case recognizing a new legal right, a federal prisoner seeking to assert that right will have one year from the decision within which to file his motion to vacate.[18] *Dodd v. United States*, 545 U.S. 353, 360 (2005). The federal prisoner may take advantage of that date *only if* the right is newly recognized and made retroactively applicable to cases on collateral review. *Id.* at 358. The Fifth Circuit has ruled that the *Booker* line of cases is not retroactive on collateral review for purposes of post-conviction relief under § 2255. *United States*

---

[18] *Blakely* was decided on June 24, 2004, *Booker* was decided on January 12, 2005, and Pena filed his § 2255 motion on January 14, 2005—within a year of both *Blakely* and *Booker*. *Blakely*, 542 U.S. 296; *Booker*, 543 U.S. 220; Dkt. # 97.

*v. Gentry*, 432 F.3d 600, 604 (5th Cir. 2005) ("*Booker* does not apply retroactively to initial § 2255 motions. . . we hold that *Booker* does not apply retroactively."). That is, prisoners challenging judgments that became final before January 12, 2005 may not claim relief pursuant to the *Booker* line of cases. *Booker*, 543 U.S. at 268 (limiting the application of its decision "to all cases on direct review" as of January 12, 2005). Because Pena's conviction became final on January 12, 2004, the rule announced in *Booker* does not apply. Accordingly, Pena's argument that his sentence should have been reduced based on *Blakely* and/or *Booker* is without merit.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability" ("COA"). 28 U.S.C. § 2253(c)(1)(A). Although Pena has not yet filed a notice of appeal, the Court nonetheless addresses whether he would be entitled to a COA. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (finding a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve

encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

For the reasons discussed above, the Court concludes that reasonable jurists could not debate the denial of Pena's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, Pena is not entitled to a COA as to any of his claims.

## Conclusion

For the foregoing reasons, Pena's 28 U.S.C. § 2255 Motion (Dkt. # 97) is DENIED, Respondent's Motion to Dismiss (Dkt. # 112) is GRANTED, and Pena is DENIED a Certificate of Appealability.

It is so ORDERED.

SIGNED this 28th day of March, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE